Good morning, Your Honor. May it please the Court. Seated with me, my name is Oscar Marrero. Seated with me at council table is Alexandra Hayes, a member of my firm who is with me on the brief. It's a pleasure and a privilege to be here. This is an appeal from the District Court from a denial of qualified immunity in a handcuffing case. At the trial level, we cited Gold v. City of Miami, the Nolan case from the 11th Circuit, and Rodriguez v. Farrell. The trial court, at pages 16 and 17 of its order, denied immunity. It distinguished those cases that we cited, either because they involved a minimus force or because they involved the aggravation of a pre-existing injury. In addition, Judge Moreno found, I believe at page 17, that because the plaintiff, Apolli, in this case, sustained a permanent injury, that is a lack of sensation, and because a permanent injury can form an excessive force claim, immunity would be denied, was denied. It is our position that, and we respectfully submit that that ruling is incorrect because it's inconsistent with earlier rulings from this Court, specifically the Sutherland case, Lee v. Ferrero, and the Secondo case. This Court, in those cases, specifically stated that the extent of the injury is not determinative, and I believe it may be a factor in the reasonableness equation. I certainly believe it is not determinative of the immunity. Isn't this case more serious than Lee v. Ferrero? I remember, well, I wrote the opinion. In Lee v. Ferrero, what happened was, the allegation was that a woman was driving a car here on Biscayne Boulevard. The car stopped in front of her, didn't move. She became impatient, hit the horn a couple of times. There was a cop right next to her, and he busted her for a vehicular violation, the violation being hitting the horn. By her account, which we had to take as true at the time, this was her account, he pulled her out of the car physically, handcuffed her behind her back, and at a time where there was no resistance whatsoever, took her to the back of the police car and slammed her head against the trunk two or three times. The charges were ultimately dropped. She filed a civil rights suit. Police officer moved for summary judgment based on qualified immunity. The district court said yes, and we reversed, and we said no, that that was the gratuitous infliction of pain on someone who posed no threat, no risk, no nothing. But what was interesting about the case was, unlike this one, there was no evidence of serious, substantial, or permanent injury. That's what you have here, and yet we denied qualified immunity in that case. How does Levy-Ferraro help you in this case? In Levy v. Ferraro, Your Honor, your Honor indicated that simply because the paralegal fortuitously did not suffer a serious injury, that that, well, you held that it was objectively unreasonable force. Correct. It was gratuitous and unreasonable, and therefore we didn't, we had no deep exploration of damages in the case. And the court found that simply because she did not sustain a serious injury, that did not convert what was objectively unreasonable force into reasonable force. Right, but you will have to concede, would you not, that the extent of the injury is relevant in the calculus? I believe that the extent of the injury is a consideration. In an excessive force case, one of the multitude of factors we look at is whether or not the plaintiff actually sustained substantial injury, permanent injury, serious injury, as opposed to what we've characterized as de minimis. Right? Yes, sir. But this case, it isn't de minimis. There's no dispute about that, right? Well, the allegation and the complaint . . . But that's all I have to, I have to deal with the allegation, right? Yes, and we accept them as true. The allegation is that he has a serious injury, but our position is that de minimis force was used during the handcuffing procedure. Let me ask you this, what bothers me, coupled with what Judge Marcus just asked you about. Here, the plaintiff apparently complained about the tightness of the original handcuffs that were placed on his wrist, and one of the officers said, quote, he knew of a way to make them tighter, period, close quote. And then he replaced them with some kind of plastic plexicuffs, which apparently were even tighter than the metal handcuffs that were originally on his wrist. And then he remained handcuffed for five hours. I just don't see any way under those facts, which this is a motion to dismiss, we have to accept as true everything in the four corners of the complaint. Your client would be entitled to qualified immunity. Well, Your Honor, I understand your question. The court has held that a police officer does not have to credit everything that a suspect, a criminal defendant, indicates to him at the scene. The man was removed from the vehicle and placed on the hood and handcuffed. I think there's a legitimate law enforcement and governmental interest in securely handcuffing people, and it should be done safely. I don't disagree with that. Yes, sir. But when he says, these are too tight, and the officer says, I know how to make them tighter, and then he remains handcuffed for five hours. That's what he alleges in his complaint, which we have to accept as true on a motion to dismiss. That's bothersome to me. I understand, Your Honor. There's no allegation in the complaint that the handcuffs were tightened. And it was cited a couple of cases in the brief indicating that threatening someone with additional force is not unconstitutional. Let me ask you this. Neither one of you cite this case in your brief, but the United States Supreme Court case of Hope v. Pelzer, does that have any effect on this case at all? You remember the facts of that case? A little different in that the petitioner was handcuffed to a hitching post for a couple of hours, but the Supreme Court of the United States reversed the Eleventh Circuit when we affirmed a district judge's grant of qualified immunity in that case. True, the facts are a little different, but in that case it was only two hours. Here we're talking about five hours. I'm familiar with the Hope case, and the Hope case talks about when a police officer would be a law enforcement agent would be on reasonable notice as to whether he or she is doing a constitutional violation. There's no allegation in the complaint that my client was with a plaintiff in this case for five hours. The United States Supreme Court, as we cited in our brief and recently in the Escondido case, indicated that qualified excessive force cases are very fact-specific and that the court should not take too much of a generalistic approach. At pages 10 through 15 in our brief, I think we found the handcuffing cases in the Eleventh Circuit, and so I think the test for qualified immunity is looking at the cases from the Florida Supreme Court, this honorable court, and the United States Supreme Court. Every handcuffing case that we located in the Eleventh Circuit either found that handcuffing was de minimis force or found that there was no constitutional violation and the officers were not held liable. In the Sutherland case and the Escondido case where there were similar complaints at the scene by the suspects who were arrested, in Sutherland it was when the police responded to the swap shop. The man was having an argument with a tow truck driver, and the officer came over and told him to please get off the street. He refused to do so. He was arrested for disorderly conduct, a minor offense. Three deputies participated in the arrest. The first deputy pulled one of the arms back, stated an obscenity to the individual. The second deputy also pulled the other arm back, pulling forcefully. The man indicated that my arm is sick. He complained. He, in fact, blacked out at the scene for a short period of time. A third deputy put, I believe, his knee in the man's back. The man declined medical attention there at the scene. I believe this court found that the use of force in that manner was de minimis. And I think that case supports our position. In the Secundo case, which is a landlord-tenant dispute, where the landlord, after the police officers told him that the tenants had a right to enter the premises, got totally upset. He started making threats. He was also arrested for disorderly conduct. In that case, his arms were pulled forcibly back, according to the opinion, and upward. He also had a prior injury. He was forced down on the ground. He was continuously complaining, and despite the complaints, one of the officers, according to the facts in that case, pushed his head down. He was placed in the patrol car, suffering more pain. And in that case, this court found that there was no constitutional violation. So if the test is, and I know that the test is a bright line, taking all of those cases together, I believe there's really no violation of clearly established law in this case, because the cases in the 11th Circuit indicate that handcuffing involves... We've said the following. In looking at the Graham factors and the factors we've imposed, we've said clearly, one, we look at the nature and extent of the physical injury sustained by the plaintiff. That's an important factor, certainly not the only one, to determine whether it was de minimis or not. If the injury is de minimis, that counts in the mix. Two, we look at the severity of the crime itself for which the defendant was being punished. Detained or arrested. Three, we look at the safety risk posed to the officers and others from the defendant. Four, we look to whether the plaintiff was attempting to flee or evade the officers. Just taking the complaint as true, as we all agree on, we're obliged at this stage to do, don't they all cut in the opposite direction against qualified immunity? One, the injury alleged here is permanent, serious, and substantial. Two, the nature of the offense was speeding. It's not of no consequence, but it's certainly not like the kinds of serious violent crimes we see all the time in this courtroom. Three, there was not the slightest indicia that the defendant posed any safety risk to the officers, or that he posed any risk to others. Four, there's no evidence that the defendant was attempting to flee or evade the officers. Don't all of those factors weigh heavily in the opposite direction? It's just taking the pleading as true, and the truth may be far from what we have here. But all of that being the case, why isn't that enough to establish at least plausibly in the complaint that the plaintiff's rights to be free from excessive force, the use of excessive force, were violated and require you to go to the next step to discovery? Where's the error there in that? Well, Judge Marcus, I agree that the gram factors favor the plaintiff aptly in this case. But this was a loss. It wasn't just the gram factors. I posited as well the nature and extent of the injury, that is to say serious and permanent as opposed to de minimis, which is a factor this court has fashioned and attributed great significance to. I understand. This court has also held that if you have a lawful arrest, executing a lawful arrest permits a police officer to use force that is reasonable force to effectuate the arrest. And in Rodriguez v. Farrell and other cases, this court has indicated that making a lawful arrest involves the use of force and sometimes injury. The officer arrested this man. He was handcuffed. He was taken out of the car. He was placed on the hood, and he was handcuffed. Was he pulled out when he yanked out of the car? Yes, sir. He was pulled out of the car. Why? Well, according to the four corners of the complaint, he was objecting to the search. They were in the middle of doing the traffic investigation, and they pulled him out of the car. That's how I understand it. Yes, sir. But the court has found that executing a lawful arrest permits an officer to use force. And sometimes in an arrest situation, an arrest can result in injury. This man was placed on the hood of the car and handcuffed. It's not uncommon to remove metal handcuffs and place flex cuffs on someone because they're going to be transported. You would give the metal handcuffs back to whoever they belong to, and he's to be transported. And he's placed in the vehicle for transport. And I know he was complaining about that. He complained about the handcuffs being too tight, and he complained that his circulation was being cut off. But the president from the court permits an officer not to credit everything that a defendant tells him at the scene. The man was subsequently taken to the police officer, and the cuffs were loosened. I think that's right. The problem you arguably have is that the complaint and the allegation, and there's some factual allegation to support it. The complaint says that the way these plastic handcuffs were actually placed on his wrist was done in a particularly willful, intentional, and wanton and gratuitous kind of way. That none of this was done for the purpose of securing him. They were going to teach this guy a lesson. He didn't do what they wanted him to do for a traffic stop, and boy, they were going to teach him the facts of life. That's basically what they allege, or that's the inference they would have us draw from what they allege. So it was the gratuitous, willful, and wanton nature of it. There's no question but that the law permits a law enforcement officer to secure a defendant with handcuffs behind his back, and he can make them tight, and that the law understands that some injury may actually arise from that. The problem you have here, perhaps, is the nature and extent of the injuries are much greater, and that the allegation is that it was utterly gratuitous. Like Lee v. Ferraro, there was no reason to take the woman to the back of the car and bang her head against the trunk. Mind you, all of this was denied by the officer as ever having happened, but we had to take on the front end of the case the claim as true. What am I missing here? Understood. In response to Your Honor's concern, this court in the Mobley decision stated that the test is objective reasonableness. We don't go by subjective intent where the officer acted in good faith or bad faith, etc. So applying that objective test, this man was handcuffed, and he was complaining, and consistent with existing law, I think Lieutenant Ortiz acted appropriately. Clearly he was not unnoticed, and he violated clearly established law, based on the cases we cited in pages 10 through 15 of our initial brief, and that certainly is our position. So the state of mind of the arresting officer is irrelevant? Let me change the hypothetical. Yes, sir. White cop arrests a black motorist for speeding, handcuffs him, takes him out in the woods and beats the daylights out of him. He says he does it because of race. Is his state of mind or motive intent utterly irrelevant to the inquiry of whether he gets qualified immunity? I believe that there's some constitutional torts that would involve the intent of the law. You understand why I... Yes, I understand. I mean, it certainly is an objective standard. I'm just suggesting to you the factual data would not be irrelevant. It may not be a dispositive fact in the case. You had reserved a minute. I didn't mean to cut you off. You were answering our questions. Is there anything else you had wanted to say on the front end of your argument? No, Your Honor. I think I've stayed in my position. Thank you very much. Thank you, sir. May it please the Court. My name is David Frankel. It's a pleasure to be here. Good morning. I represent Reuben Sebastian, the appellee in the case. Your Honors, the appellee would submit to the court that the trial court's conclusion was correct, but not for the reasons stated by the court. There's a pivot here. The primary point that I raised on appeal is that while the trial court reached the right decision, it did so for the wrong reason. This is a classic tipsy coachman situation. In effect, the court applied the wrong analysis to the law. The court believed and looked at this as if this was a valid arrest based on the fact that, as Judge Marcus has said, you can arrest for a traffic violation, but as the Supreme Court has said, when you don't arrest, then you are within the constraints that are established in Caballero and in Rodriguez for the terms of a traffic investigation. I disagree with just my esteemed counsel, who I respect very much, the characterization that this was during a traffic stop or investigation. It wasn't. Officer Grossman pulled over Mr. Sebastian. He went through the process of telling him, I'm going to cite you for speeding. He said, I want to check the tint on the front of the windows. And it was at that point he said, I can't see in the back, which we allege that he can, because the windows were open and you can particularly see in the back. There was no officer safety issue. He just wanted to search the vehicle. At that point, my client said, no, I'm not going to let you search. The point is that at that point, the investigation attendant with all the responsibilities and duties of the traffic investigation was complete. At that point, if he was not going to exercise his discretion in making the arrest, he had to let Mr. Sebastian go. At that point, and I've alleged this paragraph 20 of my amended complaint, that he detained him for a period of time longer than was necessary to complete the investigation. That's when he pulled him out of the car so he could see better into the vehicle, right? Not quite yet. Officer Grossman then called Lieutenant Ortiz. And I think it's also important, I disputed one fact in my statement of the case, which is there's no record that we can find of any police transmission. He didn't randomly call for backup because he was worried that I need backup for this. It's got to be on his cell phone that he called particularly for this officer, for Lieutenant Ortiz to come to the scene. It was when Lieutenant Ortiz arrived that Ortiz walked up to the front of the vehicle and talked to his assistant. Referring to a well-documented, substantial history of thug-like rights violations for petty little things on citizens under these kinds of circumstances. So now I think Justice, Judge Marcus, I'm sorry, was correct. They were going to teach him a lesson. You're not going to let us look in your car. And I can tell you, Mr. Sebastian, he's former military, he's a security officer, he's a guy who knows his rights. Show me a warrant. At that point that he pulled him out of the car. My point being, though, any cause to go forward to try to, anything that the police did after they completed, after Officer Grossman completed the traffic stop investigation, any probable cause for arrest evaporated at that point. The Supreme Court has said in Knowles v. Iowa, stopping a motorist for speeding, but issuing a citation rather than arresting him did not authorize the officer consistent with the Fourth Amendment to conduct a full search of the vehicle, even though the officer had probable cause to make a custodial arrest. The lower court did not see that distinction. The lower court assumed that because he had probable cause to make an arrest, that would just carry through and that the officer could do, there was no violation that could be committed. My point to this court is that everything that the officers did has to be looked at as a non, as a arrest that was made without probable cause. The first action they took was to drag him out of the car and then they put him over the hood and then they handcuffed him. Under these circumstances, they were not entitled to use any force on Mr. Sebastian. He did more than just put him on the hood. Didn't he hit his head? He slammed him down onto the hood. And by the way, I mean, as I've alleged in my brief, if you go back and you look at all of the rights violations, Lieutenant Ortiz has a henchman and his name is Edward Lugo. I believe that we're going to find out that Doe is Lugo that was called to the scene for whatever the purpose was. So my argument to the court is that the court, the lower court, applied the wrong law. I was able to find Courtney v. State of Oklahoma Public Safety. The 10th Circuit addressed this exact point. Could not an objectively reasonable officer in Grossman's circumstance have arrested a client for speeding? Yes, he could. Did he arrest him? No, he didn't. He did not. Well, they put him in cuffs, put him in a police car and hauled him off to the police department. What would you call that? What I would say is I would say that was beyond the time that he was permitted. What I'm saying is that the probable cause to make the arrest under City of Lago Vista, which the Supreme Court says you can with consistent with the traffic violation that evaporated took him too long to arrest him. That's right. It's circumscribed. How much time elapsed from the time they stopped him for speeding to the time they cuffed him? Judge, I don't want to say because I did not put it's not in the record. There's nothing in the complaint about that. No. In paragraph 20, I did allege that they stated it at a very high order of abstraction. I don't know that that's enough, but it seems to me the argument you have is even if they lawfully arrested him, the force they used was excessive. I will address that. I'm sorry. I mean, I'm just I will addressing that that struck me as the more serious claim than that there was an intervening period of time that vitiated the arrest. Well, let me say this and I apologize because I think that I had I got confused on when I could cross appeal. I felt that the court's dismissal of the other counts where the officer was granted qualified immunity. I felt all come together. I understand. Right. But what I would suggest to the court plainly on that, and I agree with where this court was going, the district court found that not only was it because of the severity of the injury, the court said it was gratuitous. Right. But the trouble here is that if you accept that the arrest was proper, let's start with that premise. You must accept that they're entitled to handcuff him. Yes. And you must accept that in the course of a handcuffing, some injury may arise. We've said as much. Yes. It's not antiseptic. I got a tough job when they stop a car. There are risks that are just poor out of these these these stops from from vehicular violations. So they knew that they could stop him. They knew they could cuff him. And they knew they could cuff him even if it caused some minor abrasion or problem. What clearly put them on notice here that what they were doing violated the Fourth Amendment? What was so obvious? It was as obvious that as it was in the Alabama case that you couldn't chain a guy to a hitch post and ninety five degree whether or not let him go to the bathroom and just make him sit there. Or in Lee Ferraro, they just slammed their head against the trunk. I don't believe it is a situation where there whether there is or is not a case similar to this, which clearly defines it. I think it comes under the rubric that even where the right has not been established, an officer is still not entitled to qualified immunity where his or her conduct is a violation of constitutional rights, which a reasonable person would have known. That's this court's decision in Nolan versus Isbell 207 Fed Third 1253, quoting Harlow versus Fitzgerald, which is the Supreme Court. I think this comes under that perspective because when you're talking about gratuitous force, that is not reasonably proportional to the need for the force that was used. And that's what I think that the lower court was focusing on. The only other thing that I would say, and I really want to emphasize to the court, is that the inferences that are to be drawn here, and I do think that it's relevant because it's the elephant or the gorilla in the room, is that one, Officer Ortiz is an officer with a documented history, a pattern of thug-like civil rights abuses against citizens who disrespect him. I've alleged that. I have the proof of that. Ortiz did not arrive at the scene randomly as a result of Grossman calling for backup. Grossman called him specifically to come to the scene. Mr. Sebastian continued to refuse to allow the search, and then Ortiz pulled him from the car and had him forced over the hood of the patrol car. He was bound in handcuffs so Ortiz told him, basically, too bad, if you don't like it, I can make them tighter. I think that on the spectrum of Graham versus Conner, if you're looking for objective reasonableness, we're on this end of it because we don't even slide down the continuum. It was gratuitous, and it was certainly not reasonably proportional to the force that was needed at the time. Is the officer's state of mind relevant? I think it is. Why and how? Well, because if you're going to use the word gratuitous, then what you're saying is you're invading what the officer is trying to do at that point. Is it appropriate to use the term in this context? I know that we have. Well, Judge, I think this whole thing was gratuitous in the sense that it was, he used the handcuffs or he used the entire procedure as punishment, and I think he wanted Mr. Sebastian to feel pain. And everything else, and I would add to that list, as Judge Stupina says, that they kept him in handcuffs. Also, I would also add finally to that, as I've alleged, Lieutenant Ortiz ultimately contacted the state attorney's office and said, we can throw this one away, don't prosecute him. I think that shows some consciousness, as an old prosecutor, shows consciousness of guilt. In other words, we knew what we did, we got our pound of flesh, and we don't need him to go to trial. And that shows somewhat of a lack of genuine intent of why you arrest somebody in the first place. Let me ask you to help me again in how we come at this case. We've posited three different ways when we're looking at clearly established. First, we ask whether the plaintiff can point to a materially similar case decided by the Supreme Court, the Court of Appeals, or the highest court of the relevant state. Everybody agrees that's not what you have here, right? Or a plaintiff can show that a broader, clearly established principle should control the novel facts in this situation. Or finally, we've posited as a third option, demonstrating that the officer's conduct was so far beyond the hazy border between excessive and acceptable force, that the official had to know, or put differently, that any reasonably sentient officer would know he was violating the Constitution even without case law on point. We said that in Priester, we said it in Maddox, we've said it a lot of times. Does this fall into the third or the second category? I think it certainly falls into the third. I don't want to give up on the second. Although, I wouldn't call these completely novel facts, as the court has recognized Lee v. Ferraro. They're not exactly the same, but I think that the gist of what we're talking about here is when an officer is using his authority for a reason that is not legitimate, is gratuitous, I think it does fall overlay over the second. But I certainly would think that it's the third. If I can prove what it is that I've alleged, then we are within the third, that this was a illegitimate, it's beyond the hazy borders of what society would permit. This is not an obvious clarity case. I'll point out some factors to the court. There was no bruising during the handcuffing, there was no bleeding, there were no broken bones. This isn't a case where somebody got handcuffed and then they twisted the handcuffs, or they used the handcuffs as a weapon and then kind of pulled the guy's arm and sort of chicken winged him to cause him something like that. It was nothing like that. It was handcuffs and he was cuffed too tightly. And I think based on the cases that we cited... Would you ever state a claim for excessive force using handcuffs? And if so, when, if not here? Well, my client is held to know what the law is and looking at the cases that exist in the 11th Circuit, I don't think he was on notice that what he did by handcuffing this person with the metal cuffs, okay, was a violation of clearly established law. And I think that's the problem in this case. He was handcuffed in Gold vs. City, Miami. The man complained that, you know, the man had abrasions in his... But he argues that whether there is a case on point or not, whether the facts are novel or not, this conduct was so far beyond the hazy border between excessive and acceptable that any reasonable officer would have to know he couldn't do what he did here. That this was done, designed, and intended to gratuitously inflict pain, and in fact succeeded in causing permanent injury. I disagree with the proposition that this was an obvious clarity case. I disagree with his argument. I think this was a man who had a weapon in the car. By the way... No, no, I'm just asking whether the allegation is sufficient. I mean, you may be dead right about all of that. Right. But that's not what controls us at this point, is it? Well, I think Mobley controls, and it's an objective test. I think that's... The objective intent of the officer, which is my colleague's argument, is not a factor in the consideration based on Mobley. Wasn't the gratuitous infliction of pain in Lee v. Ferraro relevant to the court in its decision? It wasn't that she walked away with a serious head injury. In Lee v. Ferraro, what happened is after she was secured to the trunk of the car, according to the allegations, her face was slammed down onto the trunk. This case is different because what they did is handcuffed him. What they did, and according to Allegation 25, he was not slammed on the hood of the car. I understand that. And he was cuffed, and he complained about pain, but the cases say you don't have to credit everything that someone says, and the other cases have people complaining about extreme pain, people passing out and blacking out. So based on that, I don't think there's a violation of clearly established law. Based on the current guidance, I think it's reasonable that before you get to obvious clarity, there should be further guidance from this court. In addition, there's one other thing I wanted to point out to the court. What Judge Moreno ruled was that because this person had a permanent injury, and that can support an excessive force claim, an immunity was denied. And the injury is not determinative, similar to what happened in the J.B. case where Judge Dabena was on. J.B. was a case, which is in our brief, involving the sheriff who was running kind of like the Scared Straight program, where they bring young teenagers that are having brushes with the law to this jail facility. They put them in a jumpsuit. They try to teach them, hey, stay out of it. You don't want to end up here. The sheriff in that case was talking to the young man who had created some problems with the people that were running the jail. He had thrown some stuff around. The sheriff goes over to talk to him, try to give him some advice, and the sheriff realizes that the teenager was getting ready to spit on him. So the sheriff stands, does a choke hold on him, which resulted in a bruise. It was a photograph, according to the facts of the case, a bruise on his neck. The trial judge in that case found that because it was a de minimis injury, then therefore only de minimis force was used. This court said that that was the incorrect analysis. And that's similar to the analysis that occurred at page 16 and 17 in the trial court's order in this case. So I really do believe that there is room for further guidance from the court in the qualified immunity scenario. I think qualified immunity is especially critical to not have this doctrine in the handcuffing situation and protect officers would cause a chilling effect, which would be dangerous. Unless the court has additional questions, that is my position in this matter. I appreciate your time. Thank you very much. This court will be in recess until 9 a.m. tomorrow morning. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.